HICKSON v CHRYSLER CORPORATION

1. UNEMPLOYMENT COMPENSATION—ELIGIBILITY—REMUNERATION—VA-
   CATION PAY—STATUTES.

   A laid-off employee is ineligible to receive unemployment benefits
   for the period to which vacation pay was allocated where,
   under the company-union agreement, the employer was allowed
   to allocate unused vacation days to the layoff period, because
   this amounts to "remuneration" during that period; and the
   laid-off employee was not "unemployed" within the meaning of
   the statute (MCLA 421.48).

2. UNEMPLOYMENT COMPENSATION—APPEALS—FAIR HEARING—CON-
   FLICT OF INTEREST—BIAS—VOLUNTARY DISQUALIFICATION.

   A plaintiff's claim that he was denied a fair hearing before the
   Michigan Employment Security Appeal Board because the
   board was chaired by a member who allegedly had possible
   conflicts of interest and elements of bias is without merit where
   the record reveals that such presiding chairman voluntarily
   disqualified himself from participating in the matter after the
   plaintiff so moved and the decision of the board specifically
   recites that such chairman disqualified himself and did not
   participate in the hearing, deliberation or decision.

3. UNEMPLOYMENT COMPENSATION—APPEALS—REHEARING—STATUTES
   —DISCRETION.

   The decision whether to grant or deny a rehearing is within the
   sound discretion of the Michigan Employment Security Appeal
   Board; the appeal board did not err in denying a plaintiff's
   request for a rehearing and permission to introduce additional
   evidence where the record indicates no abuse of discretion or
   improper action in the ruling (MCLA 421.34).

Appeal from Macomb, Howard R. Carroll, J.

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur 2d, Labor and Labor Relations §§ 235, 237, 384, 1233.
Construction and effect of vacation pay clause in collective labor
agreement, 30 ALR2d 351.
[2] 58 Am Jur, Workmen's Compensation § 370 *et seq.*
[3] 58 Am Jur, Workmen's Compensation §§ 541, 542.

Submitted Division 2 February 14, 1973, at Detroit. (Docket No. 13444.) Decided October 31, 1973. Leave to appeal granted, 391 Mich —.

Joseph R. Hickson presented his claim for unemployment benefits against his employer, Chrysler Corporation. Benefits denied. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals. Affirmed.

*Stephen I. Schlossberg, John A. Fillion,* and *Jordan Rossen,* for plaintiff.

*Clifford L. Johnson,* for defendant Chrysler Corporation.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

Before: V. J. BRENNAN, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

V. J. BRENNAN, P. J. Plaintiff appeals from a decision of the Macomb County Circuit Court upholding a decision of the Michigan Employment Security Appeal Board in which his claim for unemployment compensation was denied for part of a layoff period.

Plaintiff, Joseph R. Hickson, was employed by defendant, Chrysler Corporation, from March 13, 1959, until June 12, 1970. On June 12, 1970, plaintiff, a salaried employee engaged in the design of tools and dies, was "permanently" laid off by defendant due to a lack of work. At this time

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

plaintiff had accrued 17-1/2 vacation days to be used in 1970 and 10-1/2 vacation days to be used in 1971. Plaintiff and defendant had earlier agreed that the 17-1/2 vacation days were to be taken from July 6, 1970, to July 29, 1970. Shortly after his termination, however, defendant paid plaintiff for the full 28 vacation days due him. On June 15, 1970, plaintiff filed for unemployment compensation benefits. In response to an inquiry by the commission concerning the payment for the 28 vacation days, defendant claimed that the vacation pay "was allocated to the period from 6-15-70 through 7-22-70". Plaintiff was recalled by defendant on August 3, 1970.

The Employment Security Commission determined that plaintiff was ineligible for unemployment compensation from June 14, 1970, to July 25, 1970, because he was not unemployed during this time within the meaning of MCLA 421.48; MSA 17.552 because he had received vacation pay covering the period. This decision was appealed by plaintiff to an Employment Security Commission referee who, after granting defendant a rehearing, held that defendant, under the company-union agreement, could not allocate the 10-1/2 accrued vacation days to 1970 and that plaintiff was only ineligible for the 17-1/2 accrued vacation days which he had agreed to take beginning July 6, 1970. The referee determined, therefore, that plaintiff was eligible for benefits from June 14, 1970, through July 4, 1970, and ineligible from July 5, 1970 to August 1, 1970. This decision was appealed by defendant to the Appeal Board of the Michigan Employment Security Commission. The appeal board decided that the company-union agreement allowed defendant to allocate unused vacation days to the layoff period and that plaintiff

was ineligible for benefits from June 14, 1970 through July 25, 1970. The Macomb County Circuit Court upheld the decision. It is from this decision that plaintiff appeals.

MCLA 421.48; MSA 17.552 provides, in pertinent part:

"Sec. 48. An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him * * * .

* * *

"All amounts paid to a claimant by an employing unit or former employing unit for a vacation or a holiday, and amounts paid in the form of retroactive pay, or in lieu of notice, shall be deemed remuneration in determining whether an individual is unemployed under this section and also in determining his benefit payments under section 27(c), for the period designated by the contract or agreement providing for the payment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit: Provided, however, That payments for a vacation or holiday made, or the right to which has irrevocably vested, after 14 days following such vacation or holiday, and payments in the form of termination, separation, severance or dismissal allowances, and bonuses, shall not be deemed wages or remuneration within the meaning of this section."

In order for us to determine whether plaintiff was unemployed during this period within the meaning of MCLA 421.48; MSA 17.552, we are required to look to the contract between the parties to see if defendant properly allocated the payment for accrued vacation time to the period in question. *Brown v LTV Aerospace Corp,* 50 Mich App 237; 213 NW2d 254 (1973). See also *Rich Manufacturing Corp v Lindsey,* 376 Mich 241; 137 NW2d

140 (1965). If the allocation by defendant was proper under the contract, then plaintiff received remuneration for this period within the meaning of MCLA 421.48; MSA 17.552 and, therefore, was not unemployed. If the allocation by defendant was improper, however, then plaintiff was unemployed within the meaning of MCLA 421.48; MSA 17.552 for that part of the layoff period which the parties had not earlier agreed to be vacation time and he would, therefore, be entitled to unemployment compensation benefits, if otherwise eligible.

In the case at bar the contract to which we must refer is that reached between Chrysler and the UAW, plaintiff's union. This agreement, in addition to providing a schedule for the length of vacation to which each employee is entitled, provides, in relevant part:

"(88) Vacation Period

"(a) Vacations will be granted at such times during the year as are suitable, considering both the wishes of employees and efficient operation of the department concerned.

"Prior to March 1 of each year, employees of each plant or office may request the period during which they wish to take a vacation. If the number of employees who select a particular vacation period exceeds the number who can be released without affecting the efficient operation of the department concerned, the employees whose vacation requests are granted will be selected according to seniority or by any other method mutually agreed upon by the parties. Upon request, the Unit Chairman may review the vacation schedules with the designated representative of management.

\* \* \*

"(d) A vacation may not be postponed from one year to another and made cumulative, but will be forfeited unless completed during each calendar year, provided, however, an employee who is on a Disability Absence for a complete calendar year, and who returns to work

in the year following a year of Disability Absence, shall be entitled, in accordance with Section (90)(d), to the number of days of vacation he earned in the year immediately prior to his year of disability, provided he has not used or received pay for such vacation day.

"(e) A vacation may not be waived by an employee and extra pay received for work during that period.

\* \* \*

"(90) Transfer and Termination

"(a) An hourly employee transferred to salary will be eligible in accordance with these Sections (87) through (91) for a salaried vacation based on his Corporation service if he has not received a payment in lieu of vacation during the current year.

"(b) If a salaried employee is laid off, separated for a leave of absence for military service, or retires or dies, he, or his estate in the case of his death, will receive any unused vacation credit, including that accrued in the current calendar year, provided however, that a salaried employee laid off for a short period of time of known duration or temporarily separated will not automatically receive any unused or accrued vacation credits at the time of layoff or temporary separation. In the event the duration of such layoff or temporary separation becomes indefinite, the employee will receive any unused or accrued vacation credits. A recalled employee who received accrued vacation credits at time of layoff or temporary separation or subsequently during layoff or temporary separation for the current calendar year will have such credits deducted from his salaried vacation or hourly payment in lieu of vacation for the following year.

"(c) If a salaried employee is otherwise separated from employment, or is transferred to an hourly-rated job, he will receive any unused vacation credit only as of the preceding January 1 and will not be eligible for an hourly payment in lieu of vacation in the current calendar year."

Our central concern is whether § 90(b) of the agreement constitutes a designation by the parties of the period for which the vacation pay is allo-

cated. It is our considered opinion that it does. Under the above contract, the employee is entitled to a vacation each year, the length of which is dependent upon the length of time he has been employed by Chrysler. Ordinarily, the time during which the employee is entitled to take his vacation is that which the parties mutually agree upon. An employee who is indefinitely laid off, however, is, under § 90(b), to receive "any unused vacation credit, including that accrued in the current calendar year" and, in the event of a recall, the vacation credits so used are to be deducted from the vacation time for the following year. This constitutes a contractual designation that vacation time of laid off employees is to be exhausted during the layoff period. Had the parties intended that such payments were to be a bonus, as plaintiff contends, then they would not have provided for the deduction of the vacation credits so used upon the return of a recalled employee. The provision contemplates a using up of the vacation credits during the layoff period and this is what the payment was for. The arbitration decision presented by plaintiff in support of his interpretation of this contractual provision is inapposite. A substantial change was made in the contractual terminology subsequent to that decision.

Since § 90(b) of the agreement does constitute a contractual designation of the period for which vacation pay is allocated, plaintiff was not unemployed within the meaning of MCLA 421.48; MSA 17.552 during the time for which he received pay and, therefore, not entitled to unemployment compensation benefits.

Plaintiff next contends that he was denied a fair hearing before the appeal board because Mr. Peter E. O'Rourke, then chairman, participated in the decision-making process and did not, at the outset,

make certain disclosures to plaintiff about possible conflicts of interest and elements of bias on his part. An examination of the record reveals that Mr. O'Rourke, presiding as chairman, called the hearing on March 30, 1971, and then voluntarily disqualified himself from participating in the matter after plaintiff so moved. Also, the decision of the appeal board specifically recites that Mr. O'Rourke disqualified himself from participating in the hearing, deliberations, or decision of the board. Under these circumstances we find plaintiff's contentions in this regard to be totally without merit.

Plaintiff's final contention is that the appeal board erred in denying his request for a rehearing and permission to introduce new and additional evidence. Plaintiff maintains that this denial deprived him of a fair hearing and of various rights under the state and federal constitutions and that it constituted an abuse of discretion. These contentions are without merit. MCLA 421.34; MSA 17.536 provides, in pertinent part:

"The appeal board may, either upon application by an interested party for rehearing or on its own motion, proceed to rehear, affirm, modify, set aside or reverse any prior decision on the basis of the evidence previously submitted in such case, or on the basis of additional evidence * * * ."

The decision to grant or deny such a motion is a matter left to the sound discretion of the appeal board which, of course, must be exercised in a fashion consistent with the mandates of the state and federal constitutions. There is nothing on this record to indicate that the appeal board abused its discretion or acted improperly in ruling as it did. Plaintiff, in response to two direct inquiries by the

referee, stated that he had no additional evidence to present. He also failed to offer this evidence at the initial hearing of the appeal board. The proffered evidence related to a question not raised in any of the previous hearings. Plaintiff, throughout all of the proceedings, was represented by either an attorney or a UAW representative. In the absence of a showing of some compelling reason for the failure to present the evidence earlier, we cannot say that the appeal board erred in denying plaintiff's request.

Affirmed.

All concurred.